UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER MARCELLIS SANDERS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:19-CV-00057-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

At a hearing on January 30, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

**I. Whether the ALJ Improperly Rejected the Medical Opinions**

Plaintiff first challenges the Administrative Law Judge's ("ALJ") order on the ground that the ALJ improperly rejected the medical opinions. Specifically, the ALJ gave "considerable weight" to three State agency consultants, none of whom examined Plaintiff. However, she discounted the opinion of Dr. Spivey, who conducted a mental consultative examination of Plaintiff, as well as that of Dr. Lukeroth, who conducted a psychological evaluation of Plaintiff.

As an initial matter, the parties disagree about the legal standard for evaluating the ALJ's findings. The two medical opinions rejected, as least in part, by the ALJ were based on in-person examinations of Plaintiff. But the contradictory opinions given greater weight were based only on a review of Plaintiff's medical records, without any in-person examination of Plaintiff.

The Ninth Circuit has explained the hierarchy of medical opinions, and the standards needed to reject such opinions as follows:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).
>
> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer,* 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only

be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician. *Pitzer,* 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1456. In *Gallant,* we held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. 753 F.2d at 1456. Similarly, in *Pitzer,* we concluded that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence. 908 F.2d at 506 n. 4.

We have, in some cases, upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751–55 (9th Cir.1989); *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995). In *Magallanes,* we stated that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of Magallanes's treating physicians...." *Magallanes,* 881 F.2d at 752 (emphasis in original). Rather, as we pointed out, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751–52.

*Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995), as amended (Apr. 9, 1996). Here, we have two examining medical opinions contradicted by three non-examining medical opinions. The question is whether the ALJ must have "clear and convincing" reasons or only "specific and legitimate reasons that are supported by substantial evidence in the record."

In support of its argument that the higher standard applies, Plaintiff cites the following:

The only reports which directly support a finding of Gallant's ability to engage in light and sedentary levels of exertion were made by two staff physicians who never examined claimant, but who based their conclusions on a *review* of submitted medical evidence. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." *Millner v. Schweiker,* 725 F.2d 243, 245 (4th Cir.1984).

3

> The reports of the physicians who did examine claimant, which were submitted relative to Gallant's work-related ability, are persuasive evidence of claimant's disability due to pain and his inability to engage in any form of gainful activity. Although the ALJ is not bound by expert medical opinion on the issue of *disability*, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted. *Montijo v. Secretary of Health & Human Services,* 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981). While the ALJ mentioned these opinions, he did not set forth any specific reasons for rejecting their uncontroverted conclusions.

*Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). This case applied the clear and convincing standard for rejecting the opinion of examining physicians, despite contradictory opinions by non-examining physicians. The Court also used the term "uncontroverted conclusions," to describe the opinions of the examining physicians. *See also Winans v. Bowen,* 853 F.2d 643, 646 (9th Cir. 1987) (characterizing treating physician's opinions as "uncontradicted" despite contrary opinions by non-examining physicians, stating "[i]t is significant to note that these 'examining' physicians did not in fact personally examine Winans, but merely reviewed the documentary evidence of his affliction").

The Commissioner addressed this legal issue in a supplemental brief. (ECF No. 23). The Commissioner begins by taking issue with Ninth Circuit law in this area, and argues that Ninth Circuit law is inconsistent with Congressional direction. (ECF No. 23, at p. 2 ("Notwithstanding its repeated endorsement of substantial evidence as a deferential standard, the Ninth Circuit has set forth standards of its own making for review of Social Security cases, which appear to be beyond the permissive standard Congress has set.")). Notwithstanding the Commissioner's objection, this Court will follow Ninth Circuit law.[1]

The Commissioner then discusses the cases cited by Plaintiff, above. Finally, the Commissioner argues that Plaintiff's position would render the opinions of state non-examining physicians "suddenly worthless."

The Court has reviewed this thorough discussion of Ninth Circuit law on the subject. It is

---

[1] The Commissioner also questions the difference between "clear and convincing" and "specific and legitimate" reasons.

clear that, under Ninth Circuit law:

- The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.
- The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician.
- The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

For the reasons discussed below, these legal standards are sufficient to resolve the issues before the Court.

**A. Dr. Spivey**

The ALJ rejected limitations in Dr. Spivey's opinion. In particular, Dr. Spivey found moderate impairments in the "ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks," "ability to adapt to changes in job routine," "ability to withstand the stress of a routine work day," and "ability to communicate effectively in writing," which were rejected by the ALJ. (A.R. 345).[2]

First, the ALJ wrote as follows regarding the opinion of Dr. Spivey:

> Patricia Spivey, Psy.D., who conducted a mental consultative examination on April 22, 2016, concluded that the claimant had a markedly impaired ability to maintain adequate pace or persistence to complete simple and repetitive tasks, adapt to changes in job routine, withstand the stress of a routine workday, and communicate effectively in writing, (but he could follow simple instructions), maintain adequate attention and concentration, maintain emotional stability and predictability, verbally communicate effectively with others, and interact appropriately with coworkers, supervisors, and the public (Exhibit 4F). This opinion, allowing the claimant to perform some work, is given some weight because it is largely supported by the adequate mental functioning that the claimant exhibited at the mental examinations (Exhibits 4F, 16F, and 17F). In addition, Dr. Spivey has specialized expertise on mental impairments and the opinion is based upon a thorough in-person evaluation of the claimant. However,

---

[2] Dr. Spivey also found a marked impairment in the ability to maintain adequate pace or persistence to complete complex tasks, (A.R. 345), but given the RFC's limitation to simple and repetitive tasks, this limitation is adequately accounted for in the RFC and is not relevant to Plaintiff's appeal.

the opinion understates the claimant's ability to complete simple, repetitive tasks and handle routine work stress. This portion of the opinion is inconsistent with the school reports, which documented some ability to perform tasks and handle stress (Exhibits 10F, 11F, and 18F). This portion of the opinion is also inconsistent with the claimant's generally adequate daily living activities and his work activity in the transition program, which indicate considerable ability to perform tasks and handle stress (Exhibits 4FE, 4F, 10F, 18F, and hearing testimony). Furthermore, the claimant has received little specialized mental health treatment since high school.

(A.R. 35).

Regarding the reason that "[t]his portion of the opinion is inconsistent with the school reports, which documented some ability to perform tasks and handle stress," the ALJ does not cite to any specific pages or findings. The Exhibits listed in support of this reason are 89 pages long. At the hearing, counsel for the Commissioner pointed to three specific pages in the exhibits it believed supported the ALJ's conclusions. The Court has reviewed those pages and quotes the following relevant passages:

- "Xavier is able to read a passage at the fourth grade level and answer comprehension questions about material read. He is able to read passages at the third and fourth grade level and write endings or story starters, staying on topic with at least three prompts. . . . He is able to appropriately make his wants and needs known, and conducts himself appropriately in social situations. He occasionally needs prompting to stay on task; he likes to socialize with his peers." (A.R. 449).

- "He is able to complete various application forms with prompting, complete a resume with minimal prompting, and find information on attending a junior college. He is able to complete a resume with 80% accuracy, and a job application with 60% accuracy. He is able to independently begin a Student Application for Services from MJC's Disabled Student Programs and Services program, but needs assistance completing the document. When given a formal workplace document, he is able to analyze and explain how authors use the features to achieve their purposes with 70% accuracy. Xavier is able to transition between activities with minimal prompting, and ask for help appropriately. He is able to follow multiple step directions (between two and four steps) in the classroom with no more than two prompts total. He is able to work without distracting others and without being distracted by others." (A.R. 449, 481).

- "Xavier was assessed using the Work Personality Profile (WPP) and scored in the 80th percentile or higher, as compared to other adults working in a Supported Employment setting, in acceptance of work role, work tolerance, comfort with supervisor, appropriateness with supervisor, teamwork, ability to socialize with co-workers, communication skills, task orientation (which encompasses both cognitive skills and good

- work habits), social skills, work motivation (which is someone that displays an overall appropriate behavior in the work place), and personal presentation. Xavier's relative strengths are that he accepts changes in work assignments, conforms to rules and regulations, maintains satisfactory personal hygiene, expresses positive feelings, and controls his temper. A relative area of concern, as demonstrated by the WPP, is that he requires prompting to work steadily during the entire work period. Based on the results of the WPP and teacher observations it is recommended that Xavier participates in the off-campus Vocational Education Program." (A.R. 481).

- "Xavier is able to state his name, address, phone number, age, and birthdate, and is able to write the information without a model, as well as complete an application. He is able to complete a resume with 80% accuracy and a job application with 70% accuracy. Xavier is able to complete college forms with no more than 4 prompts total. . . . He is able to compile a portfolio of documents necessary to apply to Modesto Junior College, with no more than 4 prompts. He is able to analyze workplace documents by reading and comprehending words found on employment forms with 80% accuracy. . . . Given a set of mock interview questions, he needs prompting to answer the questions in a complete sentence and to clarify the questions. . . . Xavier is currently scheduled to work 4 days a week (6 shifts). . . . Each shift duration is an hour to an hour and a half. Xavier is hard working and pays attention to details. He can complete tasks with minimal prompting and looks for more to do once his assigned task is completed. Xavier is able to work at job sites with minimal supervision and learns new assignments quickly." (A.R. 546).

As an initial matter, the Court did not see in the pages cited by the Commissioner any discussion of Plaintiff's ability to "handle stress." And while there is indeed information regarding "some ability to perform tasks," this does not seem relevant to the specific opinions of Dr. Spivey that the ALJ rejected regarding Plaintiff's "ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks," "ability to adapt to changes in job routine," and "ability to withstand the stress of a routine work day."

The most probative statement in the pages cited by the Commissioner appears to be the assessment that "A relative area of concern, as demonstrated by the WPP, is that he requires prompting to work steadily during the entire work period." (A.R. 481). This passage supports Dr. Spivey's assessment that Plaintiff is impaired in the ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks. These notes also repeatedly discuss his need for prompting to stay on task, which is consistent with, but not the same as, Dr. Spivey's noted impairments.

Plaintiff has also pointed to two extensive psychological evaluations done at school at an

earlier age. As these were before the age of disability, they are of limited relevance to Plaintiff's current abilities. However, given that the ALJ relied on "school reports" generally, the Court has looked at them as well. The report from Dr. McCray, dated April 25, 2011 concludes that Plaintiff has "borderline intelligence," and "ADHD-primarily inattentive type, mixed receptive-expressive language disorder," (A.R. 269), and emphasized "his severe language delays, high level of distractibility, and cognitive delays." (A.R. 283). Additionally, he underwent a thorough examination by the school psychologist, Micaela Gomez, Ph.D., on November 25, and 26, 2013. The mental health summary was as follows:

> Xavier often fails to give close attention to details and has difficulty following through on instructions. He has difficult organizing tasks and is easily distracted by extraneous stimuli. Xavier has a few friends but has difficulty identifying when he is bothering his peers. He has formed an attachment with his sister. He often fidgets with his hands and leaves his seat when remaining seated is expected. Xavier requires multiple prompts to complete tasks. He has earned passing grades in his current setting. He is able to make friends but could use assistance in social skills and learning to sustain friendships.

(A.R. 332). These two assessments are consistent with Dr. Spivey's opinion, but again do not address the specific work issues in that opinion and are before the relevant date in question.

The ALJ's next reason for discounting the opinion of Dr. Spivey was "[t]his portion of the opinion is also inconsistent with the claimant's generally adequate daily living activities and his work activity in the transition program, which indicate considerable ability to perform tasks and handle stress." The ALJ does not cite to any specific activity, or explain how they are relevant to the impairments Dr. Spivey found related to "ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks," "ability to adapt to changes in job routine," and "ability to withstand the stress of a routine work day." Elsewhere, the ALJ notes his "ability to perform household chores such as preparing simple meals, doing laundry, taking out trash, putting away dishes, and cleaning his room and the bathroom. He can read, write, and do basic mathematical calculations. He is able to use public transportation and ride a bicycle. He can follow a story on television, watch movies, use a computer, play basketball, and play video games." (A.R. 34) Although this is a long list of simple tasks, they do not show his ability to

maintain adequate persistence and pace, the ability to adapt to changes in job routine, or the ability to withstand the stress of a routine work day.

Furthermore, the exhibits cited by the ALJ in support of this reason do not support the ALJ's summary of adequate activities of daily living. The ALJ cited to Plaintiff's own function report. (A.R. 35, citing 4E). That report includes the following statements, which show difficulties with many activities of daily living: "I forget to take a shower my mom ask every day," "I foget [sic] comb and oil," "I don't know how [to shave]" "I need to be told [to take care of personal needs] I forget a lott [sic]," he cannot prepare meals because "my mom doesn't want me to burn myself," "I forget my belt on my pants," he cannot go out alone because "my parents said if I not in school family stand together," and "my parent do[n't] let me go places alone I get lost." He also answered "not good" in response to how does he handle stress and changes in routine." Another lengthy exhibit cited by the ALJ (A.R. 35, citing Exhibit 18F) includes many mixed reports such as "Xavier's disability impedes his progress in the general education environment due to difficulties with auditory processing delays." (A.R. 542).

More relevant is Plaintiff's work activity in the transition program, also cited by the ALJ. The ALJ itself did not cite to any specific pages or reports of his work on the transition program, so the Court looked at the pages cited by the Commissioner in its brief, specifically pages 541 and 546 of the record. (ECF No. 14, at p. 15). The first page discusses how Plaintiff "has not yet been assigned to work at a job site, but participates in class lessons and goes on community outings." (A.R. 531). It also describes one community outing, during which Plaintiff went to a grocery store with a group of peers and two paraprofessionals. Although he performed positively in some respects, including that he "socialized appropriately with his peers," and "complied with directives from his teachers to grab items," he struggled with other parts of the outing. (A.R. 531-32 ("When asked how many more items were needed, Xavier had a difficult time understanding the concept of subtracting to figure out how more [sic] items he needed to grab . . . and he did not demonstrate understanding that $15 was enough to cover a total of $14.39 and wanted to hand the cashier all $18 he had on hand," "Xavier confused flour for flowers several times, but after a few reminders, remembered to grab flour," and "Xavier also found whipping cream on the shelf . . .

and made sure to ask if it was okay to grab it because it said it was 'heavy' whipping cream."). The second cited page concerns his work at the adult transition program, which was also cited above. Although it includes very positive reports, such as "Xavier is hard working and pays attention to details," the work at issue is limited to an hour to an hour and a half, four days a week. The work is also done in a highly supervised environment. Even so, the report mentions his need for "minimal prompting" for many tasks. While this work experience appears quite positive, it does not refute Dr. Spivey's specific opinions nor attest to Plaintiff's ability to sustain a normal work schedule with 8-hour days.

Furthermore, as discussed below, the ALJ gave little weight to a report by Plaintiff's teacher at the transition program, which reported that Plaintiff had "an obvious problem" with ten activities associated with acquiring and using information, and six activities relating to caring for himself. (A.R. 232, 236). The teacher also stated "Xavier needs prompting to ask for help with new tasks." (A.R. 236). In light of this detailed report of difficulties with critical skills from someone at that transition program, the ALJ's reliance on his work there is not a legitimate basis to discount Dr. Spivey's opinion.

The ALJ's final reason for discounting Dr. Spivey's opinion is the claimant has received "little specialized mental health treatment since high school." The Court finds this reason wholly unpersuasive. There is no indication that his impairments, especially the ones found by Dr. Spivey, would benefit from mental health treatment. Moreover, Plaintiff is receiving extremely targeted programming to address his impairments. Again, he currently participates in an adult vocational training program that helps adults learn basic work and life skills. For example, that program includes supervised trips to the grocery story to teach him basic life functioning. He is frequently assessed and monitored, as shown by the many detailed reports of his progress. This level of supervision and oversight is consistent with Dr. Spivey's opinion.

After careful consideration of the record, the Court finds that the ALJ's reasons for discounting the limitations provided by Dr. Spivey are not specific and legitimate reasons that are supported by substantial evidence in the record.

\\\

**B. Dr. Lukeroth**

Plaintiff next challenges the ALJ's rejection of the opinion of Dr. Lukeroth. Regarding that examining medical opinion, the ALJ stated as follows:

> Clinton J. Lukeroth, Ed.D., who conducted a psychological evaluation on May 15, 2017, concluded that the claimant's impairments severely limited his educational and occupational potential (Exhibit 16F). This opinion understates the claimant's mental capacity and is given little weight because it is contradicted by the adequate mental functioning that the claimant exhibits at the mental examinations (Exhibits 4F, 16F, and 17F). In addition, the opinion is inconsistent with the school reports, which documented some mental capacity (Exhibits 10F, 11F, and 18F). Moreover, the claimant has received little specialized mental health treatment since high school. Furthermore, the opinion is inconsistent with the claimant's generally adequate daily living activities and social activities as well as his work activity in the transition program (Exhibits 4E, 4F, 10F, 18F, and hearing testimony).

(A.R. 35).

The ALJ does not address any specific finding by Dr. Lukeroth, who's report is extensive. Although not the full extent of his findings, Dr. Lukeroth's summary states:

> His score of 70 is within one standard error of measure of the deficient range. These scores are consistent with scores obtained in 2011. Additionally, Xavier obtained delayed adaptive behavioral skills and academic fluency scores. Xavier attended special education programming from kindergarten until the present. He has been placed in special day classes during his school years and was not able to obtain a diploma. He is continuing in a public school program beyond the age of 18 due to his need for occupational and adaptive skills training. These facts suggest that Xavier's disabilities are pervasive and severely limit his educational and occupational potential. His functioning, from this point of view, is consistent with intellectual disability.

(A.R. 528).

Again, the ALJ's first reason given for discounting Dr. Lukeroth's conclusions is "adequate mental functioning that the claimant exhibits at the mental examinations (Exhibits 4F, 16F, and 17F)." The ALJ does not address any of the tests performed by Dr. Lukeroth, which are described in great detail and clearly report inadequate mental functioning. For example, Dr. Lukeroth describes in mathematical terms tests he himself performed on Plaintiff and concludes "Xavier's ability to sustain attention, concentrate, and exert mental control is in the extremely low range." (A.R. 525). The ALJ's failure to address the underpinnings of Dr. Lukeroth's

conclusions casts doubt on the ALJ's treatment of his opinions. The ALJ also cited to Dr. Lukeroth's own report at Exhibit 16 F, which, as described above, included such reported results including "His overall thinking and reasoning abilities exceed those of only approximately 2% of individuals his age." (A.R. 524). Finally, the ALJ cited to Exhibit 17F, a report from school psychologist Isabel Crawford, which demonstrated many results in the "below average," "borderline," and "extremely low" range and concluded "Xavier's cognitive skills are estimated to fall within the borderline range." (A.R. 537). After looking at the exhibits cited by the ALJ, the Court finds no support for the ALJ's conclusion that they show "adequate mental functioning that the claimant exhibits at the mental examinations."

The ALJ's remaining reasons (inconsistent with the school reports, which documented some mental capacity; the claimant has received little specialized mental health treatment since high school; the opinion is inconsistent with the claimant's generally adequate daily living activities and social activities) are addressed above regarding Dr. Spivey's opinion. Again, Plaintiff was placed in special education throughout his schooling, failed to get a diploma, and is currently in a highly supervised adult vocational training program with shifts limited to not more than one and a half hours. This history is consistent with Dr. Lukeroth's opinion.

After consideration, the Court finds that the ALJ's reasons for discounting the examining opinion of Dr. Lukertoh are not specific, legitimate, and supported by substantial evidence.

## II. Whether the ALJ Improperly Rejected Plaintiff's Testimony

Plaintiff next challenges the ALJ's finding that Plaintiff's statements about his symptoms were not fully credible.

The Ninth Circuit has explained the following legal standard for evaluating the ALJ's credibility determinations:

> An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter,* 504 F.3d at 1035–36 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). In this analysis, the claimant is *not* required to show "that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1281; *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir.2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.2002).

*Garrison v. Colvin,* 759 F.3d 995, 1014–1015 (9th Cir. 2014) (footnotes omitted). Here there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. There is no evidence of malingering. Therefore, the Court looks to whether the ALJ offered specific, clear and convincing reasons for rejecting the Plaintiff's testimony about the severity of his symptoms.

The ALJ did not address the reasons for her credibility determination directly in her opinion. Instead, she stated "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below." (A.R. 32). She then proceeded to evaluate the record, including that "he was very polite, deferential, and generally cooperative," "appeared to be focused and attentive," "was a bit shy but was friendly and cooperative," and similar comments. The ALJ does not mention any statement by the Plaintiff that she believes is exaggerated or inconsistent with the evidence. She does not quote his hearing testimony or function report. It is thus unclear how this evidence casts doubt on his credibility.

In her general summary of the record, the ALJ does specifically call out Plaintiff's lack of mental health counseling. (A.R. 33) ("The evidence of record shows that the claimant has received little specialized mental health treatment, such as counseling or psychotherapy, since high school . . . . he does not require any psychotropic medication. . . . This is inconsistent with

13

the alleged severity of his mental symptoms.") As described above, the ALJ does not explain how mental health treatment or psychotropic medication would be acceptable treatments for his impairments. She does not cite to any evidence in the record, and the Court has not located any in the many psychological assessments done on Plaintiff. Moreover, this is not a case where Plaintiff lacks any treatment for his impairments. On the contrary, he receives very intensive and specialized treatment. Plaintiff is attending a highly supervised vocational training, which supervises and evaluates his progress. The record contains detailed evidence of this training, as well as psychological assessments of his progress. For example, one record describes how "On Community Based instruction trips Xavier is able to complete the following steps in a task analysis for purchasing an item with 1-2 prompts total." (A.R. 547). This specialized treatment was the result of thorough assessments of his needs, which are consistent with his testimony.

The ALJ also discusses his work in the transition program, but does not state how this is in any way inconsistent with his testimony. (A.R. 33).

The ALJ also discusses his activities of daily living, discussed above. The only inconsistency she mentions, however is the following: "Although he allegedly had difficulty being around people, he admittedly could tolerate a crowd of up to 30 people (hearing testimony)." (A.R. 34). The ALJ provided no citations to compare what statement she believes was incorrect. The Court has reviewed the hearing transcript and located only the following discussion regarding crowds of up to 30 people:

Q [ALJ]: Okay. Do you have a problem with crowds?

A [Plaintiff]: Yes.

Q: How many people makes a crowd for you?

A: Big spaces, people I don't know.

Q: Do you know how many? How many people makes you feel like it's a crowd?

A: 30 or more.

(A.R. 56). This testimony shows that Plaintiff testified he had a problem with crowds, *not* that he could tolerate them. To cite this as evidence that he lacks credibility is highly misleading.

The ALJ also states "He was able to complete high school," citing "hearing testimony,"

(A.R. 34), but this is also not true. The hearing testimony stated "He is currently in a program. It's called the OnTrac program because he hasn't graduated from high school." (A.R. 47). Plaintiff himself also clarified to the ALJ that he "got a completion," instead of a diploma. (A.R. 50).

The ALJ next relies on her own observations at the hearing, stating "[w]hile the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of mental problems on a day-to-day basis, the apparent lack of serious mental difficulties during the hearing is somewhat inconsistent with the alleged severity of his symptoms." (A.R. 34). First of all, this description of his testimony does not cast doubt on his credibility. Moreover, the ALJ's brief evaluation of him during a hearing is no substitute for a medical evaluation. Even so, the Court has reviewed the hearing testimony and does not agree with the ALJ's assessment. On several occasions during the brief hearing, Plaintiff's answers demonstrated comprehension difficulties.

> A: Please state your name and Social Security number for the record:
> CLMT: Okay. Do I have a Social Security number?
> . . .
> Q: What's the highest grade level you completed in school?
> A: A, B, C's sometimes.
> . . .
> Q: And you're in special education?
> A: Wait?
> . . .
> Q: Do you know what her condition is?
> A: I think it's her injury disability.
> . . .
> Q: Have you filed a worker's compensation claim or an unemployment insurance application?
> A: Wait. Can you repeat that question because I don't know what that is.
> . . .
> Q: Do you have any benefits or income or help?
> A: What's that mean exactly?
> . . .
> Q: What do you do after you get up in the morning?
> A: I wash up; brush my hair; deodorant; brush my teeth; put my belt on; leave out the door; make sure I get something to eat then I go to my program.
> . . .
> Q: Do you spend time with other people?

>A: Not if I don't trust anyone.
>. . .
>Q: And how do you handle stress?
>A: Yes.

(A.R. 46, 50, 51, 52, 53, 56, 57).

After carefully reviewing the record, the Court finds that the ALJ's reasons for rejecting the claimant's testimony about the severity of his symptoms were not sufficiently specific, clear and convincing.

### III. Whether the ALJ Improperly Rejected Lay Witness Testimony

Plaintiff next challenges the ALJ's treatment of two lay witness statements.

Rachel Knoepfle is a teacher who has worked with the Plaintiff at his vocational training program. She filled out an 11-pages teacher questionnaire from the Social Security Administration assessing Plaintiff's various functions in detail. For example, she indicated he had "an obvious problem" with ten functions regarding acquiring and using information and further explained "Xavier has a specific learning disability and requires special education supports in order to learn and retain information." (A.R. 232).

Additionally, Plaintiff's sister completed a 12-page third party function report from the Social Security Administration. (A.R. 209-220). She describes, for example how he handles stress "not well at all. He tends to tug at his hair and aggressively rubs his face and hands." (A.R. 215).

>The ALJ addressed these third party statements as follows:
>Rachel Knoepfle, a teacher who has worked with the claimant at On Track Transitions since August 2016, stated that the claimant had obvious problems in acquiring the using information, attending and completing tasks, interacting and relating with others, and caring for himself (Exhibit 9E). The claimant's sister also completed a third party function report, which largely corroborates the claimant's allegations (Exhibit 5E). These third party statements are given little weight for the same reasons provided above for Dr. Lukeroth's opinion. In addition, the claimant's teacher and sister are not acceptable medical sources and lack the medical proficiency to render a reliable opinion on the claimant's limitations.

(A.R. 35).

According to the Ninth Circuit, "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v.*

16

*Comm'r,* 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e). Such testimony is competent evidence and "*cannot* be disregarded without comment." *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.* Further, the reasons "germane to each witness" must be specific. *Stout,* 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide *specific* reasons for rejecting lay testimony") (emphasis added). Additionally, an ALJ may not discredit lay testimony on the basis that the person is not a medical expert. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, Bruce's wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.") *citing* 20 C.F.R. § 404.1513(d)(4) (providing that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work").

The ALJ's reasons for giving little weight to the third party reports were not legally sufficient. The reference to reasons given for discounting the psychological evaluation results are not specific or germane to each witness, and were also addressed above. Moreover, the third party reports themselves call into question the very reasons that the ALJ discounted the opinion of Dr. Lukeroth. Specifically, the ALJ found that Dr. Lukeroth's "opinion is inconsistent with the claimant's generally adequate daily living activities and social activities as well as his work activity in the transition program." (A.R. 35). However, the third party reports contradict this report of the adequacy of his daily living activities and work activity in the transition program. Indeed, the detailed report from the teacher at the vocational program is arguably the most relevant evidence regarding Plaintiff's ability to perform work functions. It is illogical and improper to give little weight to such an assessment based on an assumption that his work activity was deemed adequate. Finally, as stated above, the fact that they are not medical sources is not a legitimate reason to reject their opinions, especially given the high relevance of their reports about his ability to perform activities of daily living and work at the transition program.

\\\

## IV. Remedy

Plaintiff asks for a remand for payment of benefits. Plaintiff cites the following rule:

> Specifically, we have devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). Plaintiff argues that the record is fully developed, the ALJ failed to provide legally sufficient reasons for rejecting evidence, and once that evidence is credited as true, the ALJ would be required to find claimant disabled.

The Commissioner asks instead of a remand for further consideration. It largely reiterates the arguments made in the rest of its brief, including that State agency doctors' non-examining opinions should be adopted rather than the opinions of examining doctors, that Plaintiff's mental status examinations demonstrate he was more functional than he claimed, and that he received little ongoing treatment. Notably, the Commissioner makes no argument that Plaintiff could be considered not disabled if the improperly discredited evidence were credited as true.

The Commissioner's arguments for a remand are unavailing. The Court has already found that the ALJ failed to provide legally sufficient reasons for rejecting evidence. The Commissioner is not entitled to a remand in order to argue for a different decision before the Commissioner based on the same evidence.

The Court finds that award of benefits is warranted in this case. The record has been fully developed and the Commissioner does not argue otherwise. As described above, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, including claimant testimony and medical opinion. The Commissioner concedes that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

\\\
\\\

**V. Conclusion**

For the foregoing reasons, the Court finds that the ALJ erred in rejecting certain portions of the opinions of examining medical experts Dr. Spivey and Dr. Lukeroth without specific and legitimate reasons supported by substantial evidence, failed to offer specific, clear, and convincing reasons for discrediting Plaintiff's testimony, and failed to provide reasons for giving little weight to the third party reports about Plaintiff that are germane to each witness.

The Court reverses the decision of the Commissioner and remands this matter for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated: **February 14, 2020**    /s/ Eric P. Groj
UNITED STATES MAGISTRATE JUDGE